IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 3, 2025

## JOHN H. CAPPS v. ONECARE DENTAL SOLUTIONS, LLC ET AL.

**Appeal from the Chancery Court for Dickson County**
**No. 2019-CV-69      David D. Wolfe, Judge**

_____

**No. M2024-00436-COA-R3-CV**

_____

In this dispute between members of a limited liability company, the plaintiff alleged that the defendant breached her fiduciary duty through the unilateral sale of company assets. The trial court referred the matter to a Special Master, who determined the assets were significantly undervalued in the sale and recommended a judgment in favor of the plaintiff. The defendant filed no objections to the Special Master's report. The trial court subsequently adopted the findings and recommendations. On appeal, the defendant challenges the trial court's adoption of the report, asserting that the trial court failed to make independent findings. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, and VALERIE L. SMITH, JJ., joined.

Douglas Thompson Bates, IV, Centerville, Tennessee, for the appellant, Deborah L. McGilton.

Jennifer Davis Roberts, Dickson, Tennessee, for the appellee, John H. Capps.

## OPINION

## I.

This appeal arises from a dispute between the two equal members of a Tennessee limited liability company, OneCare Dental Solutions, LLC ("OneCare"). The Plaintiff/Appellee, John Capps, alleged that the Defendant/Appellant, Deborah McGilton,

breached her fiduciary duties by unilaterally selling OneCare's assets for a small fraction of their value while securing personal employment with the purchaser.

In 2008, Mr. Capps and Kenneth McGilton formed OneCare for the purpose of partnering dentists with assisted living facilities to provide dental care to residents. The business model proved successful, eventually expanding to service nursing homes across Tennessee. Under OneCare's Operating Agreement, Mr. Capps and Kenneth McGilton each held a 50% membership interest. Kenneth McGilton passed away in 2015. Upon Mr. McGilton's death, his 50% interest in OneCare transferred to his wife, Ms. Deborah McGilton. Ms. McGilton then assumed an active role in the management of OneCare alongside Mr. Capps.

By 2017, the relationship between Mr. Capps and Ms. McGilton had deteriorated. In May 2017, Ms. McGilton offered to sell her 50% interest to Mr. Capps for $900,000. This offer implied a total company value of $1.8 million. Mr. Capps did not accept the offer, and the parties continued to operate the business. In June 2018, a third-party entity, Senior Dental Care, approached OneCare with a "Letter of Intent" to purchase the LLC for $650,000. However, the parties did not sell. Just a few months later, on September 1, 2018, Ms. McGilton unilaterally executed an Asset Purchase Agreement with MobileCare2U, LLC, an affiliate of Senior Dental Care, for $70,000.

The terms of this September 2018 sale differed significantly from previous valuations. Ms. McGilton sold substantially all of OneCare's assets, including its patient contracts and equipment, for a total purchase price of only $70,000, substantially below both Ms. McGilton's offer to sell to Mr. Capps and even Senior Dental Care's offer in its Letter of Intent. At that time, OneCare had, among other assets, over $260,000 in accounts receivable. As part of the transaction, Ms. McGilton personally received an employment agreement with the purchaser, securing a salary of $125,000 per year. Mr. Capps did not consent to this sale and received no distribution from it, as Ms. McGilton stated that the proceeds from the sale went to pay off company debts.

On July 2, 2019, Mr. Capps filed a Complaint in the Chancery Court for Dickson County against Ms. McGilton and OneCare. Mr. Capps asserted claims for breach of fiduciary duty and self-dealing, alleging that Ms. McGilton had stripped OneCare of its value for her personal benefit. Ms. McGilton filed a Counter-Complaint, alleging that Mr. Capps had been an absent member and that the sale was necessary due to OneCare's alleged financial distress.

Given the complex financial issues involved, the trial court referred the matter to a Special Master pursuant to Tennessee Rule of Civil Procedure 53. *See* Tenn. R. Civ. P. 53.01 (noting "[t]he court in which any action is pending may appoint a Special Master therein"). The court tasked the Special Master with addressing seven issues, including, *inter alia*, OneCare's value at the time of sale.

Following an evidentiary hearing, the Special Master filed a report on September 26, 2023, with detailed findings as to each of the seven issues the trial court had directed it to address. Regarding valuation, neither party had presented testimony from a licensed business appraiser regarding OneCare's value. Mr. Capps proposed that OneCare was valued at $2.6 million "using EBITDA taking into account the LLC's income and earnings." In contrast, Ms. McGilton contended "the value of the LLC was $650,000 on 9/1/2018, that being the amount Senior Dental offered." The Special Master rejected Mr. Capps's proposed valuation as implausible and insufficiently specific, finding it unreliable compared to other financial indicators. He also rejected Ms. McGilton's valuation, noting it was "neither credible, nor reliable, taking into consideration she valued the LLC at $1,800,000 when she tried to sell her interest in the LLC to Mr. Capps in 2017."

Ultimately, the Special Master determined that the value of OneCare on September 1, 2018, the day Ms. McGilton entered into the asset purchase agreement, was $1,602,000, a figure representing an 11% decrease from OneCare's 2017 value, which he based on Ms. McGilton's offer to buy Mr. Capps' 50% share at $900,000. He reached this 11% figure by relying on OneCare's 2017 and 2018 tax returns. Specifically, the Special Master calculated that monthly business income had decreased by 3.2%, that monthly deductions had increased by 6.9%, and that the average amount paid to members had decreased by 11.3%. Based on those calculations, he determined that "the value of the LLC decreased by 11% from 2017 to 2018, and thus, the value of the LLC in 2018 was $1,602,000." The Special Master also concluded that Ms. McGilton breached her fiduciary duties to Mr. Capps and OneCare by selling these assets for only $70,000. Additionally, the Special Master found that Ms. McGilton was liable for damages to the LLC for an additional $130,489.45. This amount was based on sale proceeds unaccounted for and her salary from Senior Dental. The Special Master recommended a total judgment against Ms. McGilton of $1,732,489.45 for the lost value of the LLC, with Mr. Capps entitled to $866,244.73 in accordance with his 50% ownership interest.

The Special Master filed the report with the Clerk and Master and served the parties on September 26, 2023. Neither party filed objections to the report within the ten-day period prescribed by Tennessee Rule of Civil Procedure 53.04(2). On February 8, 2024, the trial court held a hearing to address the report. At the hearing, Ms. McGilton's counsel stated, "No objections were filed to the report. There were some procedural issues we possibly are still exploring with the timing and some of the contents. I don't dispute anything that [Mr. Capps's counsel] stated. And that's all we have in response to that motion." With both parties present, and noting the absence of any objections, written or oral, the Chancellor adopted the Special Master's findings in their entirety. Specifically, in its written order, the court found that "no objections ha[ve] been made and that [the] Report of the Special Master and his findings and recommendations are support[ed] by the facts and existing law and as such they are hereby adopted as the ruling of this Court." The court issued an order that rearticulated the Special Master's findings in its own words.

Ultimately, the court granted judgment in favor of Mr. Capps in the amount of $866,244.73. At a later hearing, the court also awarded Mr. Capps attorney's fees. Ms. McGilton timely filed this appeal.

Ms. McGilton raises one issue on appeal: "Whether the Trial Court erred in failing to make independent findings of fact and conclusions of law when there were valid reasons to not adopt the report." Mr. Capps notes that Ms. McGilton failed to raise any objections to the Special Master's report and insists that the trial court properly exercised its independent judgment.

**II.**

"Rule 53.01 of the Tennessee Rules of Civil Procedure authorizes trial courts to refer matters to special masters." *Tennison Bros., Inc. v. Thomas*, 556 S.W.3d 697, 722 (Tenn. Ct. App. 2017). As a threshold matter, we consider whether Ms. McGilton adhered to the procedural requirements for challenging a Special Master's factual findings. Tennessee Rule of Civil Procedure 53.04(2) provides a mechanism for a party to dispute a Special Master's findings of fact. The Rule provides that within ten days after being served with notice of the filing of the report, any party may serve written objections thereto upon the other parties. Tenn. R. Civ. P. 53.04(2). Specifically:

> In an action to be tried without a jury the court shall act upon the report of the master. Within ten (10) days after being served with notice of the filing of the report, any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6.04. The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.

Tenn. R. Civ. P. 53.04(2).

Here, Ms. McGilton made no such objections. Indeed, as noted above, at the hearing on the Special Master's report, Ms. McGilton's counsel stated: "No objections were filed to the report. There were some procedural issues we possibly are still exploring with the timing and some of the contents. I don't dispute anything that [Mr. Capps's counsel] stated. And that's all we have in response to that motion."

Nevertheless, "Rule 53.04 requires the trial court to 'act upon the report of the master.'" *Tennison Bros.*, 556 S.W.3d at 722 (quoting Tenn. R. Civ. P. 53.04(2)). In doing so,

> This rule requires the judgment of the trial court. The court cannot abdicate to the master its responsibility to make a decision on the issue in question. It must do more than "rubber stamp" what the master has done. Should it decide to confirm the master's report, it must be satisfied, after exercising its independent judgment, that the master is correct in the decision he has made.

*Id.* (quoting *Peacher-Ryan v. Heirs At Law of Ruth James Gaylor*, No. W2013-02801-COA-R3-CV, 2015 WL 1598072, at *5 (Tenn. Ct. App. Apr. 9, 2015)).

Ms. McGilton argues that the trial court failed to perform its role and merely "rubber stamped" the Special Master's report. *See Peacher-Ryan*, 2015 WL 1598072, at *5 (noting the trial court "must do more than 'rubber stamp' what the master has done" (quoting *Lakes Prop. Owners Ass'n, Inc. v. Tollison*, No. 03A01-9402-CV-00038, 1994 WL 534480, at *3 (Tenn. Ct. App. Oct. 4, 1994))). Under Rule 53.04, the trial court "may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." Tenn. R. Civ. P. 53.04(2). In performing its role, "[w]hile the trial court need not issue separate findings and conclusions, it should not simply adopt the report without consideration." *Tennison Bros*, 556 S.W.3d at 723 (quoting *Hardin v. Hensley-Hardin*, No. E2014-01506-COA-R3-CV, 2015 WL 9271557, at *8 (Tenn. Ct. App. Dec. 18, 2015)) (footnote omitted). While a trial court is permitted to take additional proof if it deems it necessary, the court is not required to do so. *Hartman v. Hartman*, No. 03A01-9608-CV-00249, 1997 WL 176701, at *3 (Tenn. Ct. App. Apr. 10, 1997) ("The Trial Court is not required to hear new evidence to a Special Master's report, according to Rule 53.04(2) of the Tennessee Rules of Civil Procedure. . . .").

In considering Ms. McGilton's briefing, we struggle to fully apprehend her argument for error by the trial court. It appears that her argument is primarily predicated upon the existence of "two significant issues with the special master's report that the trial court should have addressed." The two issues are, in essence, a disagreement with the Special Master's approach to valuation of OneCare and the Special Master's approach to Mr. Capps's failure to mitigate damages.[1] How Ms. McGilton moves from these matters

---

[1] It is unclear from Ms. McGilton's briefing whether she is attempting to raise purported error as to valuation of OneCare or purported error in assessing Mr. Capps's failure to mitigate damages as independent bases for seeking reversal. To the extent that she may be attempting to do so, we conclude these issues are not properly before this court. *Compare Trezevant v. Trezevant*, 696 S.W.3d 527, 531 (Tenn. 2024) (noting that "an appellant that broadly asserts error in the statement of issues and presents an argument that leaves the opposing party guessing at the issues to which it must respond, or leaves the reviewing court scouring the record for reversible errors, risks having its issues waived") *with Etheredge v. Est. of Etheredge*, No. M2022-00451-COA-R3-CV, 2023 WL 5367681, at *4 (Tenn. Ct. App. Aug. 22, 2023) (considering an issue despite a Rule 27 violation where "the error in approach to record citation by Wife's Estate has not imposed meaningful prejudice to the [opposing party] or any meaningful burden upon this court"); *FedTrust Fed. Credit Union v. Brooks*, No. W2022-01119-COA-R3-CV, 2023 WL 3994520, at *2 (Tenn. Ct. App. June 1, 2023) (considering an issue where "the legal analysis is relatively

being potentially improperly addressed in the Special Master's report to the trial court having failed to exercise independent judgment is nowhere expressly stated and remains extremely hazy. As best as we can discern, it appears that Ms. McGilton is implicitly suggesting that the mere existence of uncorrected errors in the Special Master's report indicates that the trial court did not exercise independent judgment in reviewing the report. That argument is unavailing though. The exercise of independent judgment is not mutually exclusive with the existence of error. A trial court can exercise independent judgment and still arrive at an errant conclusion. Accordingly, even if we were to assume that these were errors, the existence of errors would not demonstrate that the trial court failed to exercise independent judgment, which is the stated basis of Ms. McGilton's appeal.

Beyond mere conclusory assertions that the trial court failed to exercise independent judgment, Ms. McGilton has only one further basis to support her contention. She points to a statement by the trial court in the wake of the hearing in this case wherein the court indicated, "I'm going to adopt the findings of the special master because there were no objections to those."

The trial court's final written order, however, expressly stated regarding the "Report of the Special Master and his findings and recommendations" that the trial court had concluded that they "are support[ed] by the facts and existing law and as such they are hereby adopted as the ruling of this Court." The trial court noted this conclusion as an

---

straightforward, and we perceive no prejudice to [the opposing party] or the administration of justice from considering [appellant's] arguments despite her Rule 27 violations").

Ms. McGilton's "Statement of the Issues" and a restatement of the issue in her argument section, both in a heading and the body thereof, indicate that her challenge on appeal is predicated upon the failure by the trial court to make an independent judgment in reviewing the Special Master's report. That is the only issue that she clearly identifies. Ms. McGilton's discussion of the valuation and mitigation deficiencies actually appear in a portion of her brief that the table of contents indicate is not as part of the "Argument on Issues for Review" but instead part of the "Standard of Review." From our reading her brief, it is clear the table of contents is in error on that point, but no headings or other language in the body of her brief make clear that Ms. McGilton is asserting valuation and mitigation of damages as errors that in and of themselves warrant reversal. From our review of the Mr. Capps's briefing, it is clear that he, *understandably*, did not perceive Ms. McGilton to be asserting these as issues on appeal. His argument is instead focused upon responding to the issue that Ms. McGilton did identify, the trial court's purported failure to make an independent judgment. Furthermore, as to the mitigation of damages by Mr. Capps, Ms. McGilton concedes this is an affirmative defense that "was not specifically pled." She notes, however, that she did plead "any affirmative defense that may become apparent throughout the course of this litigation." Nowhere in her briefing does she point us to where she raised the mitigation issue before the Special Master or the trial court; to the contrary, it appears that the matter of mitigation of damages is being raised for the first time on appeal. "It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court." *Ellithorpe v. Weismark*, 479 S.W.3d 818, 830 (Tenn. 2015) (quoting *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010)). Accordingly, as noted above, the matters of valuation and mitigation of damages are not properly before this court as issues on appeal.

additional basis behind its rulings in the present case. "It is well settled that trial courts speak through their written orders. . . ." *Elvis Presley Enters., Inc. v. City of Memphis*, 620 S.W.3d 318, 324 n.6 (Tenn. 2021). The trial court's written order reflects that it made an independent determination. Additionally, from our review of the trial court's order, it is clear that the trial court did not simply copy and paste the findings of the Special Master. The trial court's order is instead a rearticulation of the findings. In light of the arguments presented and the record before us, we simply cannot conclude the trial court failed to exercise its independent judgment and instead merely "rubber stamped" the Special Master's report.[2]

## III.

For the aforementioned reasons, we affirm the judgment of the Chancery Court for Dickson County. Costs of this appeal are taxed to the Appellant, Deborah L. McGilton, for which execution may issue if necessary. The case is remanded for such further proceedings as may be necessary and consistent with this opinion.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE

---

[2] Ms. McGilton asserts that "if Appellant prevails on its issues for appeal, the Court's ruling regarding attorneys' fees will be moot." The issue of attorney's fees is not separately raised, but we have in any event concluded that Ms. McGilton is not entitled to relief from the underlying judgment.